H. L. BOYLAN, Appellee, v. ANNA M. WORKMAN, Appellant.

470

JUNE 26, 1928.

REHEARING DENIED SEPTEMBER 28, 1928.

*Johnston & Shinn* and *Johnson & Teter,* for appellant.

*Hays, Hays & Heer,* for appellee.

FAVILLE, J.—I.  The appellant owned a farm in Marion County.  She authorized her husband, as her agent, to employ the appellee to effectuate an exchange of said real estate. Through the efforts of the appellee, an exchange was brought about.  The appellee contends that he was employed by appellant's husband under an agreement that he should be paid for his services a commission of 2 per cent upon the sale price per acre of the appellant's farm.  The husband contends that the agreement which he made with the appellee as to the commission was that appellee was to receive $1.00 per acre, instead of 2 per cent of the sale price, and that, upon condition that the farm did not "come back."  These respective contentions presented a fact question, which was submitted to the jury.  But appellant contends that she was entitled to show what express authority her husband had in the matter of agreeing with appellee upon the commission to be paid, and that she had a right to show that,

under her instructions, her husband had no authority to agree with the appellee to pay him any other or different commission than $1.00 per acre, and that, if her husband made the contract regarding the commission as claimed by the appellee, it was outside the express authority conferred upon her husband by the appellant.

The following is the record of the testimony of the appellant, as a witness in her own behalf:

"I am the defendant. I had no conversation with Mr. Boylan about his commission for the trade. Q. Did you ever authorize Mr. Workman to pay him two per cent, or any certain price? (Mr. Hays: Objected to as incompetent, immaterial, and irrelevant. Court: Sustained, for the present.) Q. Did you tell Mr. Workman how much commission you would be willing to pay Mr. Boylan? Witness: Yes. (Mr. Hays: We move to strike the answer and the question just before this, as the objection was sustained on. Court: Sustained. Mr. Shinn: I would like to have the record show, the purpose of this examination is to show what authority Mr. Workman actually had in this connection. Court: There is no claim that Mr. Boylan had any notice of it? No. Court: Then the objection is sustained.) Q. What instructions, if any, Mrs. Workman, did you give Mr. Workman with reference to paying a commission to Mr. Boylan? (Mr. Hays: Objected to as incompetent, irrelevant, and immaterial, in no manner binding upon the plaintiff. Court: Sustained.)"

The husband of appellant was a witness, and the following is the record of part of his examination:

"Q. What instructions, if any, did Mrs. Workman give you about paying Mr. Boylan a commission? (Mr. Hays: Objected to as incompetent, irrelevant, and immaterial, hearsay, and in no manner binding upon this defendant. Court: Sustained.)"

Error is predicated upon these rulings.

It is the contention of appellant that her husband was a special agent, and that the appellant can only be bound by the express authority conferred upon such agent, and that appellant was entitled to show the terms of such authority. The appellee knew that Workman was appellant's agent, and dealt with him

as such. It is an ordinary and familiar rule that a third party cannot hold the principal if the agent acted entirely outside the scope of the authority really or apparently possessed by the agent. Citation of authorities to this familiar and general rule is unnecessary. But it is also a well established rule that, as between a principal and third parties, the principal is bound by acts of the agent within the limits of the *apparent* authority of the agent.

In *Keenan v. Missouri State Mut. Ins. Co.*, 12 Iowa 126, we thus announced the rule:

"Though, as between the principal and agent, the powers of the agent may be limited, it still frequently occurs that his powers are not thus limited when the rights of third persons intervene, if the principal has so acted as to induce such third persons to act upon the assumption of more extended or unlimited powers."

In *Fishbaugh v. Spunaugle*, 118 Iowa 337, we said:

"It is a settled doctrine that the principal is bound, not only by the acts of his agent within the express limit of his instructions, but is also bound to the extent of the apparent authority conferred upon such agent; and this is true with reference to, special agents, as well as general agents. *Howell v. Graff*, 25 Neb. 130 (41 N. W. Rep. 142) ; 1 Am. & Eng. Enc. Law (2d Ed.) 986–989. This rule is applicable even against private instructions limiting the agent's power, where such limitations are not brought to the notice of the parties with whom the agent deals. *City of Davenport v. Peoria Marine & Fire Ins. Co.*, 17 Iowa 276; *Bryant v. Moore*, 26 Me. 87 (45 Am. Dec. 96) ; *Hatch v. Taylor*, 10 N. H. 538."

The American Law Institute (Restatement No. 1), Agency, Section 10, thus states the rule:

"Apparent authority is the result of the manifestation by one person of consent that another shall act as his agent, made to a third person, where such manifestation differs from that made to the purported agent."

And among the forms which such manifestation may take ·is: "That an authority is greater or other than it is in fact."

In support of the general rule as to apparent authority, see, also, *Palmer & Sons v. Cheney*, 35 Iowa 281; *Wood v. Chicago, M. & St. P. R. Co.*, 68 Iowa 491; *American Tr. & Sav. Bank v. De Jaeger*, 191 Iowa 758; *Pacific Biscuit Co. v. Dugger*, 40 Ore. 302 (67 Pac. 32); *White v. Leighton*, 15 Neb. 424 (19 N. W. 478); *Dreyfus v. Goss*, 67 Kan. 57 (72 Pac. 537); *Lister v. Allen*, 31 Md. 543; *Webster v. Wray*, 17 Neb. 579 (24 N. W. 207); *Philadelphia, W. & B. R. Co. v. Brannen* (Pa.), 2 Atl. 429; *Trainer v. Morison*, 78 Me. 160 (3 Atl. 185); 21 Ruling Case Law 854.

In *Fishbaugh v. Spunaugle*, supra, we recognized that the rule of apparent authority applied to special, as well as general, agents.

In *Nertney v. National Fire Ins. Co.*, 199 Iowa 1358, we said:

"Implied authority is said to be actual authority circumstantially proved,—the authority which the principal intended the agent to possess. Apparent authority is not actual authority, but is such as the principal holds the agent out as possessing."

To the same effect, see *American Tr. & Sav. Bank v. De Jaeger*, 191 Iowa 758; *Anderson v. Patten*, 157 Iowa 23; 2 Corpus Juris 564, Section 206.

"Apparent authority always must be determined by the acts of the principal, and not those of the agent." *Anderson v. Patten*, supra.

We said in *McIntosh & Cathro v. Penney*, 190 Iowa 194:

"We take it that, under their [some of the litigants] theory, he [the agent] was, at most, only a special agent, and, under the principles of law applicable, his authority was limited to the particular business of procuring their signatures to the notes; and that they were bound, in dealing with him, to know that they did deal with him at their peril, and that they must inquire into the nature and extent of his authority, and deal with him accordingly."

Yet, conceding that, as we must, nevertheless, as said in 2 Corpus Juris 564, supra:

"Where the third person has ascertained the general character or scope of the agency, he is authorized to rely upon the agent, having such powers as naturally and properly belonged to such character, and in the absence of circumstances putting him upon inquiry, is not bound to inquire for secret qualifications or limitations of the apparent powers of the agent."

The inquiry of a stranger in dealing with an agent must be to ascertain whether or not such person is an agent, and in general, the character of that agency; but when that has been ascertained, not by what the alleged agent may say or do, but by what the principal has done, then the stranger has a right to rely thereon. And even though the agent, in such event, be a special one, yet the stranger has a right to rely upon that person's having such authority under the special agency as the principal has "apparently" given him.

Therefore, applying those principles to the case under discussion, the stranger, upon inquiry, would discover that the wife authorized her husband to sell the land, and in addition thereto, authorized her husband to pay a commission. The apparent authority, then, of the agent was to deal with a real estate broker in the premises and agree to pay him a commission. Apparently the agent had the right to agree to pay the commission contended for by the agent in the suit. *Lee v. Conrad*, 140 Iowa 16. The claim of the wife, on the other hand, is that, while she authorized her husband to agree to pay "a" commission, she did not give him the right to pay "the" commission claimed by the broker, but some other and different commission. Her contention, then, under the facts, is no more than the assertion of secret instructions to her agent after she had clothed him with the apparent authority to go out into the world and act within the scope just described.

Appellee had no notice or knowledge of any limitations whatever upon the apparent authority which the husband of appellant possessed to fix the terms of the contract. Even though the express authority was greater or less than the apparent authority, the appellant is bound by the apparent authority of her agent, so far as the rights of appellee are concerned, where he had no notice of any limitations on such apparent authority.

We think that the court did not err in excluding the offered

testimony. The question as to what was in fact the contract between the appellee and appellant's husband in regard to the commission was properly submitted to the jury.

II. The court did not err in the instructions complained of. The appellee, under his own theory of the case, was entitled to recover on the basis of 2 per cent of the value placed upon the appellant's farm, or was not entitled to recover anything. There was no claim for recovery on any other basis. We find no error requiring interference on our part, and the judgment appealed from is—*Affirmed.*

STEVENS, C. J., and EVANS, KINDIG, and WAGNER, JJ., concur.