Umana, J.
This is an action of contract in which the plaintiff seeks to recover the sum of $2,000, exclusive of interest, costs and reasonable attorney’s fees, under the provisions of G.l.c. 90 § 34M.
The plaintiff alleged in his complaint that the defendant insurance company issued a policy to Boston Pet Supply, Inc., for the period January 1, 1977 to January 1, 1978, covering an automobile owned and registered by the said Boston Pet Supply,.Inc., for personal injury protection benefits in accordance with G.L.C.'90 § 34M, said policy providing for payment of personal injuries to all persons injured while operating said automobile; that on March 10,1977, the plaintiff while operating said automobile with the consent of the named insured was injured as a result of a collision; that the plaintiff sustained severe personal injuries as a result thereof; that on or about April 22,1977, the plaintiff made claim under said policy of insurance to be reimbursed for medical bills incurred which were in excess of $2,000; and that the plaintiff has not recéived'payment from the defendant of said $2,000 in accordance with said statute.
The defendant in its answer denied that the plaintiff had not received payment of the $2,000 and further alleged that if it owed the plaintiff any monies the same hav.e been paid in full.
In addition, the parties stipulated that if the court finds that the defendant violated the provisions of G.L.c. 90, § 34M, reasonable attorney’s fees would be'assessed in the amount of $500.
The court found for the defendant and the judgment entered on August 3, 1981.
This case is brought before the Appellate Division on an Agreed Statement of Facts under the provisions of M.G.L.c. 231, § 108.
It is agreed that this case be submitted to the court for its decision upon an agreed statement of facts and that all the material ultimate facts on which the rights of the parties are to be determined are the following:
1. The plaintiff is a resident of Malden, Middlesex County, Massachusetts.
2. The defendant is an insurance corporation with an usual place of business in Arlington, Middlesex County.
3. The defendant issued a policy of insurance to Boston Pet Supply, Inc., of Cambridge, Middlesex County, for the period January 1,1977 to January 1, 1978 covering a Plymouth Cricket automobile owned by and registered to the said Boston Pet Supply, Inc., for personal injury protection benefits in accordance with General Laws c.90, § 34M, said policy providing for payment for personal injuries to all persons injured while operating or occupying *124 said automobile.
4. The policy of insurance issued to Boston Pet Supply, Inc., by the defendant was in full force and effect on or about March 10, 1977, and throughout the entire year of 1977.
5. On or about March 10,1977, the plaintiff, while lawfully operating said automobile on Broadway and Bow Street, a public highway in the city of Everett, Middlesex County, with the consent of the named insured, was injured as a result of a collision with another motor vehicle, as a result of which the plaintiff sustained severe personal injuries and was put to great expense for medical attention and hospitalization.
6. On or about April 22,1977, the plaintiff engaged Albert F. Cioffi, then an attorney with an office in said Everett, to represent him in making claim against the defendant for reimbursement under the personal injury protection provision of said c. 90, § 34M, and said policy. Said Cioffi submitted an application form with the defendant for said benefits, together with medical bills in excess of $2,000. Said application form was received by the defendant on or about April 25, 1977, and a copy of said form is attached hereto and marked ‘A’.
7. Upon receipt of said form and medical bills, the defendant investigated the circumstances of the accident and the amount of the medical bills incurred by the plaintiff arising from said accident.
8. On or about May 23,1977, in compliance with the plaintiffs claim, the defendant issued its draft in the sum of $2,000, a copy of which is attached hereto and marked B’.
9. The draft was made payable to the plaintiff Mark K. Terry, and Albert F. Cioffi, Esquire, and was mailed by the defendant to Attorney Cioffi, at his Everett, Massachusetts office.
10. The plaintiff had no knowledge that the defendant had issued its draft or that Cioffi had received the same until many months after the draft had been mailed'to Cioffi.
11. The name and signature of the plaintiff as payee was forged on the back of the draft by Attorney Cioffi who negotiated the same, received the proceeds thereof, and retained said proceeds.
12. The plaintiff did not authorize anyone, including Attorney Cioffi, to endorse his name on the draft.
13. As a result of said action, the plaintiff did not receive any of the proceeds of said draft.
14. Subsequently, the defendant was notified by the plaintiff or his attorney that he had not endorsed his name to the draft, had not authorized anyone else to do so, and had not received any of the proceeds thereof.
15. Albert F. Cioffi was subsequently indicted by the grand jury of Middlesex County on charges of larceny and other crimes and on March 31, 1978, he pleaded guilty to certain of those charges and was sentenced to six to eight years in prison. He was subsequently disbarred as an attorney by the Massachusetts Supreme Judicial Court.
The first issue to be resolved is whether the attorney for the plaintiff had either actual or implied authority not only to negotiate with the defendant insurance company on behalf of his client, but also to receive any drafts due his client on his behalf. The agreed statement of facts states in part, “On or about April 22, 1977, the plaintiff engaged Albert F. Cioffi, then an attorney with an office in said Everett, to represent him in making claim against the defendant for reimbursement under the personal injury protection provision of said c. 90, § 34M, and said policy.” On the basis of that statement, it *125 would appear that the trial justice was warranted in finding that there was implied authority given by plaintiff to the attorney to receive a draft from the defendant insurance company on behalf of the plaintiff. See Coral Gables v. Granara, 285 Mass. 565, 571, 572 (1934). The burden of proving that the attorney does not have implied authority is on the plaintiff in this case. Kackly State Bank v. Michols, 162 Kan. 648, 179 P. 2d 186 (1941). Also see SEAVEY, AGENCY (Hornbook Series).
The next inquiry is whether, even if there is no such implied authority on the part of the attorney to receive the draft in behalf of his client from the defendant insurance company, there is apparent authority. The authority of an agent becomes apparent authority to those who know the agent’s position and who have reason to believe that the authority extends to that normally exercised by agents appointed to such a position. Boylan v. Workman, 206 Iowa, 469, 220 N.W. 49(1928). In this case, the receiving of the draft from the defendant insurance company by the attorney on behalf of the plaintiff client certainly is within the scope of authority normally exercised by attorneys. The plaintiff thus has the burden of proving that the defendant was not reasonable in its reliance upon the attorneys apparent authority to receive the draft.
Under the circumstances, the defendant could not reasonably ignore the attorney’s apparent, if not implied, authority without subjecting itself to a violation of M.G.L.c. 90, § 34M. The defendant took reasonable precautions in making the draft payable to the attorney and the plaintiff jointly. It is well settled in Massachusetts that the fraud of an agent acting in the course of his employment is binding upon the principal as against third parties. See Bocker v. Dorchester Mutual Fire Insurance Co., 327 Mass. 473, 477(1951).
Massachusetts courts have adopted the language of the AMERICAN LAW INSTITUTE’S RESTATEMENT OF AGENCY § 27, in which apparent authority is defined as that which discloses “written or spoken words or any conduct of the principal which, reasonably interpreted, causes a third person to believe that the principal consents to have the act done in his behalf by the person purporting to act for him.” Neilson v. Malcom Kenneth Co., 303 Mass. 437,441 (1939); Hardy v. Baran, Mass. App. Ct. Adv. Sh. (1980) 2235,2239.
On the basis of the facts submitted as Agreed Statement of Facts, the trial justice was warranted in finding not only that there was implied authority on the part of the attorney to receive the draft payable to him and his client plaintiff jointly, but even failing to find implied authority, he was also warranted in finding there was apparent authority both to ‘ ‘represent him (the plaintiff) in making claim against the defendant for reimbursement under the personal injury protection provision of said c. 90, § 34”, (see Agreed Statement); and also to collect a draft on behalf of the plaintiff. The trial justice was also warranted in finding that the defendant took all reasonable precautions by making out the draft in the joint names of the attorney and plaintiff.
There is a further matter of public policy involved in the facts of this case. It is widespread knowledge that insurance companies deal with attorneys who correspond with them in behalf of clients on the assumption that they have full authority to settle cases in behalf of their clients. It is unreasonable to impose upon them the burden of inquiry from each client whether the attorney has such authority, just as it is unreasonable to expect them to foresee that a member of the Massachusetts Bar Association would forge the signature of his client. To upset such an accepted practice in this area of case settlement would create not only confusion, but would also inhibit the insurance companies in their standard procedures for settlement of claims with attorneys.
The report is dismissed and the trial justice’s findings and judgment are affirmed.