## CLARENCE M. ROOF
### v.
## MORRISSON, PLUMMER & CO.

*Sales—Identity of Purchaser—Copartnership—Dissolution of—Notice— Corporation—Formation of.*

1. A vendor who has the right to suppose, from existing facts known to him, that he is selling on credit to a known customer, can not be required to part with his property, and receive therefor the promise to pay of another person of whose existence he was ignorant. When a party attempts to make himself the purchaser against the will and understanding of the seller, the title to the goods does not pass, although the forms of a sale have been complied with.

2. Whether the supposed contract is created by fraud, or innocent mistake, the legal effect is the same.

3. The obliteration of the symbol " & " from a business sign, and the labels upon the bottles in a drug store, printed in small letters, are no notice that a copartnership has become a corporation, there being no change in the place of business.

[Opinion filed June 2, 1890.]

APPEAL from the County Court of Cook County; the Hon. RICHARD PRENDERGAST, Judge, presiding.

Mr. ROBERT F. SHANKLIN, for appellant.

The essentials to a sale are mutual assent of the parties, an object, and a price. If any one of these essentials is wanting, there can be no sale. The contention of appellant is that the first of these essentials, assent, the mutual meeting of the minds of the contracting parties, was lacking in the transaction in question in this suit. There was a mistake, a misunderstanding as to the person with whom the contract was made.

"The general rule of commercial law as to notice of withdrawal from, or dissolution of partnership, is that, to persons never having dealt with the firm, notice by publication is sufficient; but as to those who had previous dealings with it, actual notice, or its equivalent, must be shown." Meyer v. Krohn, 114 Ill. 574; Spurck v. Leonard, 9 Ill. App. 174.

"Such notice must be specially communicated to those who have been customers of the firm, and as to all others, by publication in some newspaper in the county, or in some other public and notorious manner." Bristol v. Sprague, 8 Wend. 424.

"When a change takes place in the members of a firm by their action, or by some going out or coming in, as to all persons accustomed to deal with a firm, it is necessary, in order to change the relation of the parties, and to charge such persons with the liabilities and ordinary consequences of a change of members of the firm, that they have actual notice thereof. And as to such former customer continuing to deal with the firm, so far as regards the public, ostensible members, and those to whose responsibility he had before trusted, notice in the newspapers and mere notoriety will not discharge or alter the relations of the outgoing or incoming partners in respect to subsequent transactions. * * * As to him the partnership is presumed to continue the same until he has actual knowledge of the change." Page v. Brant, 18 Ill. 38; Collyer on Part., Sec. 533; Story on Part., Sec. 161; Chitty on Cont., 210.

"As to persons who have been in the habit of dealing with the firm, it is requisite that actual notice be brought home to the creditor, or at least that it be given under circumstances from which actual notice may be inferred." Kent's Com., Vol. III, 81.

"The notice must be a reasonable one." Wardwell v. Haight, 2 Barb. (S. C.) 549, 552.

Roof v. Morrisson, Plummer & Co.

Messrs. Flower, Smith & Musgrave, for appellee.

Vanderberg was acting solely as president of the corporation, and made no representation otherwise. The facts were such as to bring home knowledge of this fact to the agent, Gilmore. The contract made under these circumstances, we submit, is binding, and, having been executed, can not be avoided.

"It is a well established rule, that, where a party has notice of facts sufficient to put a prudent person on inquiry, he is chargeable with notice of such facts as would have been ascertained from a prudent investigation." Parker v. Merritt, 105 Ill. 293–300.

The cases cited by counsel for appellant on the question of notice, are not in point. They were all cases brought to hold a partner after he had retired from a partnership, and had failed to give notice of dissolution. In such cases the law imposes an absolute duty upon the retiring partner to give personal notice to persons with whom he has dealt, and notice by publication to others. Omission creates liability. The fact that a reasonably prudent man might have been put on inquiry, and could have ascertained the fact of dissolution, will not relieve the retiring partner.

But here the question is different. Assuming (what we do not admit) that the plaintiff by his agent did not have knowledge he was selling to the corporation, the question remains, ought he not, under the circumstances, to have known it?

Garnett, J. Appellant is a liquor merchant, doing business in New York. For a period of fifteen years prior to the transaction in question, he had been selling his merchandise to the firm of A. C. Vanderberg & Company, who were engaged in the drug business in Chicago. He had, during this interval, extended credit to this firm, and found them prompt in the settlement of his accounts.

The firm of A. C. Vanderberg & Company dissolved partnership in the month of June, 1887, and a corporation known as the A. C. Vanderberg Company, was then formed, which

succeeded to the business of the firm, and continued the same in the stores occupied by the firm during its existence. So far as the record shows, no notice of the dissolution was published in the newspapers of Chicago. No notice of the dissolution was sent to the appellant, Roof, and he had no knowledge or notice of that fact, or of the existence of the corporation at the time of the transaction hereinafter mentioned. When the firm ceased to exist, and the corporation began, the sign over its place of business was altered by omitting the symbol "&" therefrom, the only difference between the firm name and that of the corporation being the presence of this symbol " &" in the title of the former.

In October, 1887, a traveling salesman of appellant called at the Vanderberg store to solicit orders. A. C. Vanderberg, one of the partners of the old firm, and president of the corporation, gave him a verbal order for one cask of brandy and one cask of port wine, the agreed price for the goods amounting to $193.75, on the usual credit. Nothing was said by Vanderberg, at the time, which could be taken as notice to this agent of the recent change from the firm to a corporation; no name under which the goods should be consigned was given by Vanderberg. There was no sign in the interior of the building calculated to attract attention; the labels upon the bottles ranged upon the shelves, so small that he was not likely to see them, being the only *indicia* of proprietorship. That was the only visit of the salesman to the store after the corporation was organized.

The goods so ordered were shipped to the firm of A. C. Vanderberg & Company. They arrived in Chicago about the 23d of October, 1887, and were delivered at the place of business of the A. C. Vanderberg Company. The corporation on the 12th of November, 1887, made an assignment for the benefit of its creditors. The goods were never paid for.

The assignee in taking possession of the corporation assets was notified by Vanderberg that these goods were not the property of the corporation. They had not been opened for retail, and were placed in a compartment of the store separate from the bulk of the corporation goods.

Roof v. Morrisson, Plummer & Co.

At the assignee's sale appellees became the purchasers of the goods in question, though they were duly notified before making any bid that the property did not belong to the insolvents' assets. After appellees took possession of the goods so purchased, appellant demanded their return to him, and upon appellees' refusal to surrender them, he brought this action before a justice of the peace, to recover their value. From the justice's judgment an appeal was taken to the County Court, where the result was adverse to the plaintiff, and he brings this appeal.

The law is stated thus in Anson on Contracts (2d Am. Ed.), 163: " Where " A ' intends to contract with ' M,' ' X ' can not make himself a party to the contract by substituting himself for ' M.' And the reason for this rule is two-fold. 'A' looks to the credit and character of ' M.' If ' X ' is put in place of ' M,' ' A ' does not get what he bargains for, and further, ' X ' is never present to ' A's ' mind in the formation of the contract. So ' A ' is no consenting party to a contract made with ' X.' "

If this doctrine is too broad, we think no objection can be made to it when (in case of sales) it is confined to sales on credit. And with this agrees Benjamin on Sales, Sec. 58, where it is said: " A mistake made as to the person with whom the contract is made, may or may not avoid the sale according to circumstances. In the common case of a trader who sells for cash, it can make no possible difference to him whether the buyer be Smith or Jones, and a mistake of identity would not prevent the formation of the contract. But where the identity of the person is an important element in the sale, as if it be on credit, where the solvency of the buyer is the chief motive which influences the assent of the vendor, or when the purchaser buys from one whom he supposes to be his debtor, and against whom he would have the right to set off the price, a mistake as to the person dealt with prevents the contract from coming into existence for want of assent."

A vendor who has the right to suppose, from existing facts known to him, that he is selling on credit to a known cus-

tomer, can not be required to part with his property, and receive therefor the promise to pay of another person of whose existence he was ignorant. The vendor has the liberty of choosing his purchaser, and the law does not require him to give reasons for his choice. When a party attempts to make himself the purchaser against the will and understanding of the seller the title to the goods does not pass, although the forms of a sale have been complied with. Cundy v. Lindsay, 3 App. Cases (L. R.) 459.

In *Ex Parte* Barnett, 3 Ch. D. (L. R.) 123, the appellants had executed an order sent to them by an undischarged, liquidating debtor, under the mistaken belief that they were dealing with a firm with whom they had had previous business transactions, and whose name resembled that of the liquidating debtor, and it was held that appellants were entitled to the goods against the trustee in liquidation. Whether the supposed contract is created by fraud or innocent mistake, the legal effect is the same; and the rule works both ways. Thus, where the plaintiff succeeded to the business of one Brockelhurst, with whom the defendant had been accustomed to deal, and the defendant sent an order for goods to Brockelhurst, the plaintiff supplying the goods without any notification of the change, held, that there could be no recovery of the price, as the defendant had made no contract with the plaintiff. Boulton v. Jones, 2 Hurl. & N. 564. And the rule has been held to apply even where the goods have been consumed by the purchaser before he was notified of the fact that they were not supplied by the party from whom he ordered them. In Boston Ice Co. v. Potter, 123 Mass. 28, the defendant in 1873 bought ice of the plaintiff, but on account of some dissatisfaction with the manner of supply, terminated his contract with it, and then made a contract with the Citizens' Ice Co., to furnish him with ice. Some time before April, 1874, the Citizens' Ice Co. sold its business to the plaintiff with the privilege of supplying ice to its customers. The defendant received and consumed the ice furnished by the plaintiff, but supposed he was getting it from the Citizens' Ice Co., and had no notice that the plaintiff was furnishing it until after it was consumed. In the opinion of

Roof v. Morrisson, Plummer & Co.

the court it is said: "A party has a right to select and determine with whom he will contract, and can not have another person thrust upon him without his consent. It may be of importance to him who performs the contract, as when he contracts with another to paint a picture, or write a book, or furnish articles of a particular kind, or when he relies upon the character or qualities of an individual, or has, as in this case, reasons why he does not wish to deal with a particular party. In all these cases, as he may contract with whom he pleases, the sufficiency of his reason for so doing can not be inquired into." The plaintiff's right of recovery was denied.

Stoddard v. Ham. 129 Mass. 383, is not inconsistent with the other cases cited, as there was in that case neither mistake in the identity of the party with whom the contract was made, nor any concealment or fraudulent contrivance.

Anything short of actual notice to appellant of the change from the firm to the corporation, could have no effect upon his rights. Meyer v. Krohn, 114 Ill. 574. Until then he could go on in his dealings with the firm as though it had never dissolved, and no other liability could be offered him as a substitute for that of the firm. The only evidence of actual notice of the change is the fact that the traveling salesman who sold the goods, entered the Vanderberg store when the slight change before stated appeared upon the sign over the store. There is no evidence that he saw the omission in the sign, nor is there any probability that he noticed it, or the labels in small letters on the bottles in the store. Circumstances which may be regarded as far more likely to attract attention, have been held to be no notice. Trainer v. Morrison, 78 Me. 160; Kinsman v. Kershaw, 119 Mass. 140; Putnam v. French, 53 Vt. 402; Block v. Price, 32 Fed. Rep. 562.

It can not be fairly said that there was any evidence tending to prove actual notice to appellant, or his agent, of the withdrawal of the Vanderberg firm from the business, or the existence of the corporation.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*